USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: August 17, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

LUDWIG CREMER,

Defendant.

**OPINION AND ORDER**

12 Cr. 473 (ER)

RAMOS, D.J.:

Ludwig Cremer is currently serving a sentence of 121 months' imprisonment at FCI Allenwood Low, a low security prison in Pennsylvania, and is scheduled to finish his sentence on May 13, 2022. Before the Court is his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), based on the COVID-19 pandemic. Doc. 58. The Government opposes the motion. For the reasons set forth below, Cremer's motion is DENIED.

## I.  BACKGROUND

### a.  Prior Proceedings

In March 2011, an undercover agent with the Federal Bureau of Investigation ("FBI") observed images of child pornography in Cremer's account on a file sharing program named GigaTribe. PSR ¶ 8. The Internet protocol address utilized by Cremer's account was registered to a business in Manhattan, owned in part by him, where a search warrant was executed that yielded a computer containing at least 327 images and 72 videos depicting child pornography. PSR ¶¶ 9–11. Following that search, Cremer admitted in an FBI interview to downloading and making available for download child pornography using GigaTribe, as well as transferring child

pornography from his computer to a CD to avoid getting caught by his business partners.  PSR ¶ 12.

Cremer was arrested on November 10, 2011.  On June 19, 2012, a grand jury in the Southern District of New York indicted Cremer, charging him with knowing receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and (b)(1).  Doc. 6.  The Indictment further charged him with knowing possession of materials that contained child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  *Id*.  A superseding indictment, with substantially the same charges, was filed on March 6, 2013.[1]  Doc. 31.  On March 15, 2013, Cremer pled guilty to Count One of the superseding indictment.  *See* Doc. 34.  In the plea agreement, the parties agreed that Cremer's sentencing guideline range was 97–121 months' imprisonment, a calculation that included several enhancements in the then-applicable child pornography guidelines.[2]  *See* U.S.S.G. § 2G2.2.

As part of its presentence investigation, the Probation Office reviewed the computer seized from Cremer's business.  The majority of those materials depicted simulated and actual sex acts between adult males and minor boys.  The Presentencing Investigation Report ("PSR") found:

> Most disturbing were images and videos depicting a six-month-old infant forced to perform oral sex on an adult male and being anally penetrated by an adult male; the anal penetration of a ten-year old boy by an adult male; a young boy bound and restrained on a bed with his head positioned upside-down, while an adult male ejaculates on his face and inside his

---

[1] The superseding indictment charged Cremer with knowing receipt, transportation, and distribution of child pornography in violation of 18 U.S.C. § 2251A(a)(1) and (2), and (b)(1), and 18 U.S.C. § 2, and with knowing possession of child pornography in violation of 18 U.S.C. 2252A(a)(5)(B), (b)(2), and 18 U.S.C. § 2.

[2] When asked during his plea allocution, whether he knowingly received the child pornography he had downloaded, Cremer obfuscated, saying "[i]t's like a whole block you download, and you don't actually know what is inside that block, that folder.  And afterwards, I realized that there were some child pornography images in there."  *See* Doc. 34, at 25.  Upon further questioning, Cremer admitted that he knew there "might" be some child pornography among his downloads.  *Id*.  Cremer ultimately admitted that he knew he was receiving child pornography.  *See id*. at 26.

>mouth; and a minor boy with tied hands, who appears to be crying and in pain, who was forced to perform oral sex on an adult male while having his hair pulled.

PSR ¶ 14. Also found on Cremer's computer was Yahoo! Instant Messaging chats in which he engaged in explicit webcam chats with underaged boys. PSR ¶ 15. For example, Cremer asked a boy who identified himself as 16 to send him pictures of his genitals. PSR ¶ 15. According to information provided by the National Center for missing and exploited children, Cremer's images and videos included 23 different series depicting known child victims. PSR ¶ 17.

The Probation Department recommended a sentence of 60 months' imprisonment based, in part, on Cremer's age of 61 at the time, the fact that he would be subject to deportation upon release, and the results of a psychosexual examination conducted at the request of the Probation Department that concluded that Cremer's overall risk to re-offend appeared remote. PSR at 27–28. Though the Probation Department also recognized that "the seriousness of this offense cannot be overlooked." *Id*.

Cremer's sentencing took place on October 11, 2013 before the Honorable Katherine B. Forrest. Judge Forrest first determined that a two-point enhancement (not included in Cremer's plea agreement) should be applied for "knowingly engag[ing] in distribution" as set forth in U.S.S.G. § 2G2.2(b)(3)(F).[3] *See* Sentencing Tr. ("Tr."), Doc. 58, Ex. D, at 23–26. As a result, Judge Forrest calculated Cremer's sentencing guideline's range as 121–151 months' imprisonment, and imposed a sentence of 121 months.[4] *See id*. at 31–32. Judge Forrest provided

---

[3] On September 26, 2013, the Second Circuit concluded in *U.S. v. Reingold*, that a district court's failure to include a two-point enhancement under U.S.S.G. § 2G2.2 for distribution where the defendant placed child pornography in a shared folder on GigaTribe was an error of law. 731 F.3d 204, 227–28 (2d Cir. 2013). At Cremer's sentencing, Judge Forrest specifically cited *Reingold* in applying the two-point enhancement.

[4] Judge Forrest also found that Cremer's "numerous chats" in which he directed underage individuals to engage, via webcam, in sexually explicitly conduct qualified for an additional five-level enhancement for "exploitation of a minor" under U.S.S.G. § 2G2.2(b)(5), but ultimately did not apply this enhancement.

3

a detailed explanation of why she imposed the sentence, including the seriousness of Cremer's offense and the need for both specific and general deterrence. *Id*. at 35–43. In particular, Judge Forrest noted that Cremer was not just a passive receiver, but also a participant in the marketplace of child pornography, as well as the fact that many of the victims were prepubescent, and would continue to be harmed by circulation of the images and videos. *See id*. Judge Forrest further noted the violent nature of many of the images and the vulnerability of the very young victims. *See id*. Judge Forrest also observed that there was no indication that Cremer had accepted responsibility for his offense, or that he would have stopped his behavior on his own had he not been stopped by the FBI.[5] *See id*. Finally, she found that the psychosexual evaluation was conducted based on Cremer's "self-portrayal," without reference to the underlying images, which she believed would have been important to determining "the extent and level of [Cremer's] interest in certain boys of particular ages." *See id*.

  b.  **The Instant Application**

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. On March 26, 2020, Attorney General William Barr issued a memorandum in which he directed the Bureau of Prisons (the "BOP) to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to vulnerable inmates, while ensuring its obligation to protect the public. *See* Doc. 502, at 37–38. In a subsequent memorandum dated April 3, 2020, the Attorney General reiterated his earlier guidance and further directed the BOP to give priority to the "most vulnerable inmates" at the "most affected facilities." *Id*. at 39–41.

---

[5] Although Judge Forrest expressed her belief during sentencing that Cremer had not really accepted responsibility, she nevertheless gave him credit for acceptance of responsibility. *See* Tr. At 32. ("I do give you credit for acceptance of responsibility.  I don't take that out, though I think there are reasons to do so.").

On June 12, 2020, Cremer filed a request with the Warden of FCI Allenwood Low for compassionate release. On June 23, that application was denied. On July 20, Cremer filed the instant motion.

Cremer claims that the threat of COVID-19, combined with the fact that he is 68 years old and suffers from heart ailments and chronic hypertension, constitute extraordinary and compelling reasons for his compassionate release. Cremer's BOP medical records confirm that he suffers from high blood pressure and a heart murmur due to "dynamic outlet obstruction."[6] Cremer argues that the 18 U.S.C. § 3553(a) factors also weigh in favor of release because, as a German citizen with a child pornography conviction, he faces immediate deportation upon release. In addition, he argues that his clean incarceration record, when viewed together with the psycho-sexual evaluation in this case, shows that he is unlikely to re-offend. Cremer further argues that the 81 months he has served is sufficient to serve the goals of 18 U.S.C. § 3553(a), especially in light of the Probation Department's recommended sentence, as well as the Government's prior willingness to accept a sentence of 97 months' imprisonment.[7] Finally, Cremer points to the difficulties that inmates convicted of child pornography face in prison, and the Second Circuit Court of Appeals' instruction that the child pornography guideline "is

---

[6] Cremer has attached to his motion an opinion by M.D. Madeleine Mason ("Dr. Mason"), a licensed physician in the State of Minnesota, but not Cremer's treating physician. After reviewing his medical records, Dr. Mason explained that while a heart murmur can be benign, Cremer's dynamic outlet obstruction, a condition that makes it increasingly difficult for the heart to pump out blood, shows that his heart murmur is actually pathologic and likely progressive. Dr. Mason further explained that Cremer's hypertension, which also forces the heart to work harder to pump out blood, may worsen his heart ailments and together, put him at an increased risk of serious consequences should he be infected with a respiratory infection like COVID-19. Finally, Dr. Mason explained that even if Cremer survives a COVID-19 infection, his existing heart disease is likely to progress more rapidly and become more severe.

[7] According to Cremer, if he had been sentenced to 97 months' imprisonment, he would be close to release based on the 81 months he has served with good time credits.

fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010).

On July 27, 2020, the Court received the Government's opposition. Doc. 60. The Government contends that Cremer's medical conditions are not so serious, per the Centers for Disease Control's guidelines and even considering his age, such that they significantly increase his risk for severe illness if infected with COVID-19.[8] The Government further contends that the rationale articulated by Judge Forrest in applying the § 3553(a) factors, particularly the nature and circumstances of the offense and the need for specific and general deterrence, has not changed since his sentencing. Lastly, the Government details the substantial steps that the BOP has undertaken to prevent the spread of COVID-19.

On July 29, 2020, the Court received Cremer's reply. Doc. 62. In his reply, Cremer cites to various decisions in this district that found that the threat of COVID-19 to inmates alone constitutes an extraordinary and compelling reason for compassionate release, *see id*. at 1, and argues that his age and medical conditions makes his case even more "extraordinary and compelling." As for § 3553 (a) factors, Cremer argues that nothing has changed since 2013 to make his case more serious. *See id*. at 3. Finally, Cremer contends in his reply that while he "engaged in sexually explicit webcam chats with young men, some of whom claimed to be 16 or 17, [he] did not, in fact, know their true ages and engaged in these chats for purposes of sexual fantasy play.[9] *See id*. at 3, n.2.

---

[8] At the time of the Government's opposition, there were no confirmed cases of COVID-19 at FCI Allenwood Low. As of the date of this order, there has been 1 confirmed case of an inmate testing positive for COVID-19 at FCI Allenwood Low. *See* https://bop.gov/coronavirus/ (last accessed August 17, 2020)

[9] During sentencing, Cremer's counsel similarly argued that many chats, but not every one of them, were fantasy talk. *See* Tr., at 32–34. Judge Forrest responded that there were a number of chats with a participant self-identified as a minor, and there was content in those chats that indicated that they were, in fact, minors given their particular

II. **LEGAL STANDARD**

a. **18 U.S.C. § 3582**

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13.  *See id*.  The Guidelines place three conditions on a determination of early release:

> (1) There are extraordinary and compelling reasons that warrant the reduction; and
>
> (2) a situation where "the defendant is not a danger to the safety of any other person or to the community."
>
> (3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines § 1B1.13.  The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially

---

physical characteristics.  *See id*. at 34–35.  In reply, Cremer's counsel stated that "I'm not disputing words on the page and your interpretation of them…It is conduct that is unacceptable."  *Id*. at 35.

diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. cmt. 1(A)(ii)(I). The Guidelines further include as an "extraordinary and compelling reason" if the defendant is at least 65 years old, has served at least 10 years or 75 percent of his sentence, and "is experiencing a serious deterioration in physical or mental health because of the aging process." *Id*. cmt. 1(B).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

> (1) The nature and circumstances of the offense charged…;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person…; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### III.   DISCUSSION

#### A. Extraordinary And Compelling Reasons

Preliminarily, the Court recognizes that some courts within this district have found that the threat of COVID-19 in the confinement context alone constitutes an "extraordinary and compelling" reason, *see U.S. v. Arango*, No. 15 Cr. 104 (JMF) (S.D.N.Y. June 26, 2020) (Doc. 22) (citing *U.S. v. Pena*, No. 15. Cr. 551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020). Other courts have held that the risks posed by COVID-19 alone do not constitute

extraordinary and compelling reasons for release absent additional factors such as advanced age or serious underlying medical conditions that place a defendant at greater risk of negative complications if infected with the illness.  *See U.S. v. Hasan-Hafez*, No. 16 Cr. 221-2 (KPF), 2020 WL 2836782, at *4 (S.D.N.Y. June 1, 2020) (citing *U.S. v. Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1–2 (S.D.N.Y. May 14, 2020) (collecting cases)).  The Court finds that Cremer's medical condition combined with his age, arguably satisfies a threshold showing of "extraordinary and compelling reasons."

It is undisputed that Cremer, who is 68 years old, suffers from chronic hypertension and a heart murmur.  To be sure, as the Government contends, the CDC has not identified a heart murmur alone as a risk factor for severe illness from COVID-19, and courts have recognized that "publicly available medical literature repeatedly indicate that not all heart murmurs are the same and many are lifetime conditions never requiring medical intervention," *see U.S. v. Penaloza*, No. TDC 19-238, 2020 WL 1555064, at  *3 (D. Md. Mar. 31, 2020) (denying release of defendant suffering from heart murmur while noting that defendant offers no expert opinions here).  The Government also points to Cremer's medical records as indicating that his hypertension, for which he receives routine medical care and medications, is "benign essential." However, Cremer has offered the medical opinion of one medical professional who opines that his heart murmur is a risk factor, especially when combined with his hypertension.  In addition, the CDC has recognized that hypertension alone might increase one's risk of severe illness from COVID-19.  While the Government is correct that Cremer's heart appears to be operating within normal limits with treatment and medications, the Government has supplied no evidence that the combination of his heart murmur and hypertension is not a risk factor.

More importantly, the CDC itself has recognized that the risk for severe illness increases with age.  In fact, the CDC's website notes that 8 out of 10 COVID-19 related deaths reported in the United States have been among adults aged 65 years and older.  Accordingly, the Court concludes that, on balance, the combination of Cremer's age and underlying medical conditions constitutes an "extraordinary and compelling reason" within the meaning of 18 U.S.C. § 3582(c)(1)(A).

### B.  Section 3553(a) Factors

However, after considering the § 3553(a) factors, the Court nevertheless concludes that early release is not warranted.

There can be no serious dispute that the nature and circumstances of Cremer's offense were horrific.  While it is not necessary to describe in detail the large number of images of child pornography that Cremer downloaded and made available to others, it is worth noting that Judge Forrest's detailed explanation of the need for both individual and general deterrence still holds true today.  Indeed, Cremer continues to refuse to accept responsibility and downplay his conduct by arguing in the instant motion that he did not know the true ages of the self-identified 16 or 17-year-old young men with whom he engaged in sexually explicit webcam chats, and claims that it was all for purposes of "sexual fantasy play."  *See* Doc. 62, at 3, n.2.  It is difficult to credit Cremer's representation that deterrence is no longer needed.[10]

To be sure, these are unusual times.  But as this Court observed in the context of a separate application, "just because there is a pandemic does not mean that the jailhouse doors ought to be thrown open."  *United States v. Nunez*, No. 20 Cr. 239 (ER) (S.D.N.Y. Apr. 10,

---

[10] That Cremer will likely be deported to Germany upon release does not weigh in favor of his early release.  As the Government correctly points out, upon his return to Germany, Cremer will not be under the close supervision of the Probation Office as he would be had he remained in the United States.

2020) (Ramos, J.). Cremer was sentenced for serious and dangerous crimes, and he has failed to show that deterrence is no longer needed. Accordingly, his motion for compassionate release is denied. *See United States v. Conley*, No. 19 Cr. 131 (PAE) (S.D.N.Y. Mar. 31, 2020) (Engelmayer, J.) (denying pretrial bail for inmate on high-risk list with asthma, partial lung removal, diabetes, high blood pressure, and hypertension because medical risks were outweighed by serious risk of danger to community).

### IV. CONCLUSION

For the aforementioned reasons, Cremer's motion for compassionate release is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 58. It is SO ORDERED.

Dated:   August 17, 2020
    New York, New York

                       Edgardo Ramos, U.S.D.J.