UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

LUDWIG CREMER,

Defendant.

**OPINION AND ORDER**

12 Crim. 473 (ER)

Ramos, D.J.:

Ludwig Cremer is currently serving a 121-month sentence at FCI Allenwood Low in Pennsylvania for the possession and distribution of child pornography. On August 17, 2020, this Court denied Cremer's motion for compassionate release ("August Order"). Doc. 64. Now pending before this Court is Cremer's motion for reconsideration. For the reasons set forth below, Cremer's motion is denied.

## I. Factual Background[1]

In its August Order, the Court found that, at 68 years old, Cremer's age and medical conditions put him at elevated risk from COVID-19 infection and constituted extraordinary and compelling reasons under the meaning of 18 U.S.C. § 3582(c)(1)(A). Doc. 64 at 9-10. The Court concluded, however, that the "horrific" nature of the offense outweighed those circumstances and counseled against release. *Id.* at 10-11. In particular, the Court explained that Cremer's continued refusal to accept responsibility for engaging in sexually explicit webcam chats with teenage boys, instead arguing it was mere "sexual fantasy play," underscored the need for deterrence in his case. *Id.* at 11. Four months later, on December 11, 2020, Cremer moved for reconsideration. Doc. 65. The Government opposes the request.

[1] The Court assumes the parties' familiarity with the facts and procedural posture of this action as described in the August Order. Doc. 64.

Cremer argues that two changed circumstances compel his release. Doc. 65 at 1. *First,* the risk of contracting COVID-19 has increased given the ongoing outbreak at FCI Allenwood Low. Doc. 65 at 2. At the time of the Court's August Order, FCI Allenwood Low had only one confirmed case of coronavirus among inmates. Docs. 64 at 6 n.9. When Cremer filed the instant motion on December 11, 22 inmates had tested positive, but just one week later, the number of inmates testing positive had burgeoned to 152. Docs. 65-1 at 6; 68-1 at 2. As of today, the Federal Bureau of Prisons ("BOP") reports that, of the 559 inmates at FCI Allenwood Low who have been tested for coronavirus, 242 have tested positive and 2 are awaiting results.[2] According to BOP data, there are currently 59 inmates and 12 staff infected with COVID-19, while 179 inmates and 2 staff have recovered and none have died as a result of the virus. *Id.* *Second*, Cremer has now served 86 months of his 121-month sentence, the last 9 of which during the lockdown period limiting inmate opportunities for movement, education, and other programming. Doc. 65 at 3. Cremer contends that these circumstances strengthen the reasons supporting his release, and weaken the reasons the Court cited for continuing his incarceration until his May 13, 2022 release date.[3] *Id.* at 1, 3.

In opposition, the Government argues that the nature and circumstances of Cremer's offense, including the need for deterrence, has not lessened in the four months since the August Order. Doc. 67 at 1. In addition, at the time of the Government's filing, FCI Allenwood Low had a lower 7-day positivity rate than New York, New Jersey, or even Pennsylvania, the state where FCI Allenwood is located. *Id.* at 2. Moreover, Cremer's release would still place him at

---

[2] COVID-19, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 8, 2021).

[3] Cremer also informs the Court that, since the August Order, he has been approved for a "treaty transfer" to serve the remainder of his "prison sentence" in Germany. Docs. 65 at 1; 65-1 at 2. Because Cremer is seeking immediate release, and would therefore not be serving a prison sentence in Germany if he were to prevail, this change of circumstance does not factor into the compassionate release analysis.

greater risk for contracting COVID-19 because he would be in immigration detention until he could be safely removed to Germany. *Id.*

## II. Standard

Compassionate release is governed by § 3582(c)(1)(A)(i), which provides that a court may reduce a prisoner's sentence for "extraordinary and compelling reasons." In evaluating such motions, courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them[.]" *U.S. v. Brooker*, 976 F.3d 228, 237 (2d. Cir. 2020) (finding compassionate release is not limited by the U.S. Sentencing Guidelines § 1B1.13). If the sentencing court finds that "extraordinary and compelling reasons" exist to reduce a prisoner's sentence, it may then release the prisoner early only "after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" § 3582(c)(1)(A). Section 3553(a) provides that the Court should consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant[.]"

Although Cremer does not specify any rule under which he moves for reconsideration, courts in this District apply Local Criminal Rule 49.1(d) in this context. *See, e.g.*, *U.S. v. Spencer*, No. 04 Crim. 1156 (PAE), 2020 WL 3893610, at *3 (S.D.N.Y. July 10, 2020); *U.S. v. Lisi*, No. 15 Crim. 457 (KPF), 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020). Under Rule 49.1(d), a reconsideration motion must be filed within 14 days of the Court's decision on the original motion and explain "the matters or controlling decisions which counsel believes the Court has overlooked[.]"

The standards governing criminal reconsideration motions are "largely the same" as those governing civil reconsideration motions. *Lisi*, 2020 WL 1331955, at *2. Indeed, prior to the existence of Rule 49.1(d), courts in this District applied Local Civil Rule 6.3 to civil and criminal

cases alike. *Id.* at 1 n.1 (citing *U.S. v. Carollo*, No. 10 Crim, 654 (HB), 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011)). As with civil cases,"[t]he decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Lisi*, 2020 WL 1331955, at *1 (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011)). Reconsideration is "an extraordinary remedy" and "is not a vehicle for relitigating old issues, presenting the case under new theories or otherwise taking a second bite at the apple." *Lisi*, 2020 WL 1331955, at *2 (citations omitted). Reconsideration may be granted, however, when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Spencer*, 2020 WL 3893610, at *3.

## III. Discussion

As a preliminary matter, although Cremer's motion was filed outside of the 14-day window for filing criminal reconsideration motions, the Court excuses his untimeliness because the primary circumstance giving rise to his motion—namely, the increased COVID-19 infection rate at FCI Allenwood Low—did not occur until mid-December.[4] *Spencer*, 2020 WL 3893610, at *3 (excusing an untimely reconsideration motion based on the court's discretion); *Lisi*, 2020 WL 1331955, at *1 (same). However, neither of the new circumstances Cremer cites in his motion compels his release.

The Court recognizes that the current uptick in coronavirus cases across the country,[5] including among incarcerated individuals who cannot reasonably practice social distancing and

[4] A Major COVID-19 Outbreak at Allenwood Federal Prison, News Radio 1070 WKOK (Dec. 19, 2020), https://www.wkok.com/583392-2/ (reporting 152 positive inmates at the low security facility).

[5] Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Jan. 8, 2021) (showing an 15% increase in new COVID-19 cases from two weeks ago).

who often do not have sufficient access to personal protective equipment,[6] increases Cremer's risk of contracting coronavirus. The Court likewise acknowledges, as it did in its August Order, that Cremer's age and medical conditions potentially predispose him to worse outcomes from infection. Doc. 64 at 9-10. But while these realities may strengthen the extraordinary and compelling reasons necessary for compassionate release that the Court had already found in its August Order, they still do not outweigh the countervailing seriousness of Cremer's offense or the need for deterrence in his case. Doc. 64 at 10-11.

Nor does Cremer having served four more months of his sentence since the Court's August Order mitigate the Court's concerns. As the Court explained in its August Order, if Cremer were released early and removed to Germany, he would not be subject to the same close supervision that he would be under if he were to remain in the United States. Doc. 10 n.10. The need for supervision is all the more clear where, as here, the Court has noted a continued need for deterrence.

Finally, as a practical matter, Cremer's early release is also unlikely to lessen his risk of contracting coronavirus. Upon release, Cremer will be transferred to immigration detention until he can be safely removed to Germany. There is no reason to believe his risk of contracting COVID-19 would be any less in yet another incarceratory setting. *See supra* n. 6.

Cremer's motion for reconsideration is therefore denied.

[6] Brendan Saloner, PhD, et al., COVID-19 Cases and Deaths in Federal and State Prisons, JAMA (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249 (explaining that "close confinement" as well as "limited access to personal protective equipment" increase the risk for COVID-19 infection while incarcerated and finding that the COVID-19 infection rate for inmates was 5.5 times higher than the U.S. population).

## IV. Conclusion

For all of these reasons, Cremer's motion for reconsideration of the Court's August Order is denied. The Clerk is respectfully directed to terminate the motion, Doc. 65.

SO ORDERED.

Dated: January 8, 2021
        New York, New York

                                        Edgardo Ramos, U.S.D.J.